UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

CHRISTOPHER SCOTT ALLEN,

                    Plaintiff,

v.

AMANDA BEAUMONT et al.,

                    Defendants.

_____/

Case No. 1:22-cv-258

Honorable Ray Kent

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought and was granted leave to proceed *in forma pauperis*. (ECF No. 4.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendant(s) is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v.*

*Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way that they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Muskegon County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Registered Nurse Amanda Beaumont and Doctor Thomas Lanore. (Compl., ECF No. 1, PageID.1, 3.)

In Plaintiff's complaint, he alleges that on July 6, 2021, he "sent a kite to healthcare requesting treatment due to him playing basketball and injur[]ing his knee which prevented him from walking or putting pressure on it." (*Id.*, PageID.3.) The next day, July 7, 2021, "Plaintiff was

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

summoned to healthcare motivated by his previous request." (*Id.*) Plaintiff was assigned Nurse Beaumont "as his nurse," and Plaintiff explained that "his knee [would] pop[] when he walk[ed] and the swelling which was clearly visible wouldn't go down or subside." (*Id.*) "[W]ithout doing a[n] exam[]," Nurse Beaumont advised that "it was a 'mild sprain that would subside soon.'" (*Id.*, PageID.3–4.) "Plaintiff demonstrated the complications from the injury to [Nurse] Beaumont which showed swelling and a visible disfigurement and d[e]formity as well as a lump." (*Id.*, PageID.4.) Nurse Beaumont "then stated[,] 'I don't think your injuries are serious enough for me to schedule you to see the doctor[,] so[] I'm not scheduling it.'" (*Id.*) Plaintiff was "taken [a]back by this reckless disregard," and he asked Nurse Beaumont if she was "seriously going to deny [him] treatment?" (*Id.*) Plaintiff contends that Nurse Beaumont "became upset and instructed [Plaintiff] to leave and kicked [Plaintiff] out of healthcare" without the treatment Plaintiff wished to receive ("i.e., crutches, ace wraps, ice, bottom bunk detail and most crucial no appointment with a doctor or pain medication"). (*Id.*)

Thereafter, Plaintiff filed a grievance. (*Id.*) In response to the grievance, Plaintiff contends that Nurse Beaumont "falsified medical records indicating there 'were no deformities, edema, or bruising.'" (*Id.*) Doctor Lanore "reviewed the documentation generated by [Nurse] Beaumont and without examination or evaluation determined that [Nurse Beaumont's] plan of action was appropriate." (*Id.*)

Subsequently, on July 16, 2021, "Plaintiff was called to healthcare again due to extreme knee pain and a[n] inability to walk or put pressure on his knee." (*Id.*) Plaintiff contends that Nurse Beaumont and other unnamed nurses again did not provide Plaintiff with the treatment that he wished to receive (i.e., "pain medication or ace wraps, crutches or a bottom bunk detail due to his

inability to climb onto a top bunk"), and "Plaintiff was referred again to [Doctor] Lanore." (*Id.*, PageID.4–5.)

On July 19, 2021, Plaintiff had an appointment with Doctor Lanore. (*Id.*, PageID.5.) "[W]ithout physically examining [P]laintiff," Doctor Lanore "diagnosed [P]laintiff's injury as a sprain." (*Id.*) Plaintiff states that he "was ejected from [Doctor Lanore's] office" without the treatment that Plaintiff wished to receive, such as pain medication, crutches, ace wraps, or a bottom bunk detail, but "[a]n X-ray was ordered finally." (*Id.*)

Approximately six weeks later, "[o]n September 3, 2021, Plaintiff fell in excruciating pain while in food service screaming in agonizing pain due to his injury causing him to lose all stren[g]th in his knee and leg." (*Id.*) Plaintiff states that "[t]hereafter, [he] was scheduled for a[n] MRI which verified [P]laintiff's complaints of something being torn and ruptured preventing [P]laintiff's mobility." (*Id.*) Plaintiff further states that, "[o]n this same day in question[,] September 3, 2021[,] Plaintiff was finally given a[n] ice pack for his right knee as well as a[n] ace wrap to wrap up his right knee and crutches as well as a bottom bunk detail." (*Id.*)

The MRI results were received on September 28, 2021, and the MRI showed a "multidirectional tear medial meniscus with a balled up flipped meniscal fragment off the anterior horn/body junction." (*Id.*) On September 29, 2021, Doctor Lanore "submitted a[n] orthopedic consult request due to the extent of [P]laintiff's injuries." (*Id.*, PageID.5–6.) Thereafter, Plaintiff was evaluated by a doctor at Mercy Hospital on October 14, 2021. (*Id.*, PageID.6.)

Based on the foregoing allegations, Plaintiff avers that Nurse Beaumont and Doctor Lanore violated his Eighth Amendment rights because they were "deliberat[e]ly indifferent to [his] serious medical needs when they failed to treat and delayed treatment for non-medical reasons, and in doing so caus[ed] [P]laintiff to suffer unnecessarily for two months." (*Id.*) Plaintiff also avers that

by "delaying and denying medical attention to [P]laintiff's serious medical need," Nurse Beaumont and Doctor Lanore violated his due process rights under the Fourteenth Amendment because the "[C]onstitution imposes upon medical personnel[] the responsibility to provide speedy and competent care." (*Id.*) As relief, Plaintiff seeks compensatory and punitive damages. (*Id.*, PageID.7.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.      **Eighth Amendment**

Plaintiff alleges that Defendants Beaumont and Lanore violated his rights under the Eighth Amendment because they were "deliberat[e]ly indifferent to [his] serious medical needs." (Compl., ECF No. 1, PageID.6.)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v.*

7

*Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison

8

official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007);

*McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, . . . he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). The prisoner must demonstrate that the care the prisoner received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

In this action, Plaintiff contends that he injured his knee while playing basketball on July 6, 2021, and his knee "showed swelling and a visible disfigurement and d[e]formity as well as a lump," and it was painful. (Compl., ECF No. 1, PageID.3–4.) The Court assumes, without deciding, that Plaintiff has adequately alleged the objective component of the relevant two-prong test with respect to his knee injury.

As to the subjective component of the relevant two-prong test, it is apparent from Plaintiff's complaint that he received medical treatment from Defendants and that Defendants did not disregard a substantial risk of serious harm to Plaintiff. Specifically, after Plaintiff submitted a medical kite on July 6, 2021, alerting medical staff to his knee injury, he was seen by Defendant Beaumont the next day, July 7, 2021. (*Id.*, PageID.3.) At the appointment, Plaintiff explained that "his knee [would] pop[] when he walk[ed] and the swelling which was clearly visible wouldn't go down or subside." (*Id.*) Plaintiff also "demonstrated the complications from the injury to [D]efendant Beaumont which showed swelling and a visible disfigurement and d[e]formity as well as a lump." (*Id.*, PageID.4.) Plaintiff contends that "without doing a[n] exam[]," Defendant

Beaumont advised that "it was a 'mild sprain that would subside soon.'" (*Id.*, PageID.3–4.)
Plaintiff also contends that Defendant Beaumont stated, "I don't think your injuries are serious
enough for me to schedule you to see the doctor[,] so[] I'm not scheduling it." (*Id.*, PageID.4.)
Although Plaintiff contends that Defendant Beaumont did not "do[] a[n] exam[]" at the
appointment, it is apparent from Plaintiff's allegations that his knee injury, with or without "a[n]
exam[]," was clearly visible to Defendant Beaumont, and Plaintiff described his symptoms in
detail do her at the appointment. (*Id.*, PageID.3–4.) Further, it is clear from Plaintiff's complaint
that he believes that Defendant Beaumont should have conducted the medical appointment in a
different manner and that he disagrees with her diagnosis and treatment decision (i.e., he believed
that he should have been provided with "crutches, ace wraps, ice, bottom bunk detail and most
crucial [an] appointment with a doctor or pain medication") (*id.*, PageID.4); however, "a patient's
disagreement with his physicians [or other medical providers] over the proper course of treatment
alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *Darrah*,
865 F.3d at 372 (citations omitted); *Mitchell*, 553 F. App'x at 605 ("[A] desire for additional or
different treatment does not suffice by itself to support an Eighth Amendment claim." (citations
omitted)).

Relatedly, Plaintiff alleges that Defendant Lanore subsequently reviewed Defendant
Beaumont's treatment plan and Plaintiff's related medical records—which Plaintiff contends were
"falsified" by Defendant Beaumont in response to his grievance—and "without examination or
evaluation determined that [Defendant Beaumont's] plan of action was appropriate." (Compl.,
ECF No. 1, PageID.4.) Plaintiff's allegations regarding the "falsifi[cation]" of his medical records
show a disagreement with Defendant Beaumont's diagnosis and description of his knee injury, and
likewise, Plaintiff's allegations regarding Defendant Lanore's approval of the "plan of action"

reflect a disagreement with Defendants Beaumont's and Lanore's treatment plan; however, none of these allegations state a cognizable claim under § 1983. (*See id.* (disagreeing with Defendant Beaumont's diagnosis and description of his knee injury); ECF No. 1-1, PageID.11 (setting forth the Step I response to Plaintiff's grievance)); *Darrah*, 865 F.3d at 372; *cf. Reed v. Nelson*, No. 2:20-CV-0512-DMC-P, 2021 WL 2417655, at *4 (E.D. Cal. June 14, 2021) ("While alleging the falsification of medical records is relevant to a claim for deliberate indifference, there is no cognizable Eight Amendment claim solely for the falsification of medical records." (citations omitted)).

Furthermore, Plaintiff's allegations show that he continued to receive prompt treatment from Defendants *when he alerted them* to subsequent issues with his knee. Specifically, on July 16, 2021, after Plaintiff complained of "extreme knee pain and a[n] inability to walk or put pressure on his knee," Plaintiff had an appointment with Defendant Beaumont. (Compl., ECF No. 1, PageID.4.) At that time, "Plaintiff was referred again to [D]efendant Lanore." (*Id.*, PageID.5.) Although Plaintiff believes that Defendant Beaumont provided inadequate medical care at the appointment because she did not provide Plaintiff "with pain medication or ace wraps, crutches or a bottom bunk detail," all of which Plaintiff wished to receive, Plaintiff's allegations show that Defendant Beaumont made a treatment decision to refer him to Defendant Lanore for further examination, and Plaintiff simply disagrees with this treatment decision. (*Id.*, PageID.4–5.); *see Darrah*, 865 F.3d at 372; *Mitchell*, 553 F. App'x at 605.

Thereafter, Plaintiff had an appointment with Defendant Lanore on July 19, 2021, and Plaintiff contends that "without physically examining [P]laintiff," Defendant Lanore "diagnosed [P]laintiff's injury as a sprain." (Compl., ECF No. 1, PageID.5.) Plaintiff states that he "was ejected from [Defendant Lanore's] office" without the treatment that he wished to receive, such as pain

medication, crutches, ace wraps, or a bottom bunk detail, but "[a]n X-ray was ordered finally."
(*Id.*) These allegations again show disagreement with Defendant Lanore's diagnosis and treatment
decision; however, they do not show deliberate indifference. *See Darrah*, 865 F.3d at 372;
*Mitchell*, 553 F. App'x at 605; *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (discussing that
prisoners are not entitled to "unqualified access to health care" (citation omitted)); *Estelle*, 429
U.S. at 105 ("[T]he question whether an X-ray or additional diagnostic techniques or forms of
treatment is indicated is a classic example of a matter for medical judgment. A medical decision
not to order an X-ray, or like measures, does not represent cruel and unusual punishment.").

Plaintiff's X-ray was "completed on 7/21/21 with indication of arthritic changes." (Attach.,
ECF No. 1-1, PageID.11.) Thereafter, from July 22, 2021, through September 2, 2021, Plaintiff
did not alert Defendants to any issues with his knee, and he does not allege that he continued to
have any issues with his knee during this time period. That is, nothing in the complaint suggests
that Plaintiff was in severe pain, unable to walk, unable to engage in everyday activities, or unable
to sleep during this approximately six-week period. Because Plaintiff does not allege that he
continued to have any issue with his knee or that he alerted Defendants to any continuing issues,
Plaintiff's allegations, or lack thereof, fail to show that Defendants were deliberately indifferent to
a serious medical need during this time period.

Following this approximately six-week period during which Plaintiff does not allege that
he continued to have issues with his knee, Plaintiff contends that he "fell in excruciating pain while
in food service" on September 3, 2021, and he was then scheduled for an MRI and received "a[n]
ice pack for his right knee as well as a[n] ace wrap to wrap up his right knee and crutches as well
as a bottom bunk detail." (Compl., ECF No. 1, PageID.5.) Subsequently, after the results of the
MRI were received, showing a "multidirectional tear [in his] medial meniscus with a balled up

flipped meniscal fragment off the anterior horn/body junction," Defendant Lanore "submitted a[n] orthopedic consult request due to the extent of [P]laintiff's injuries." (*Id.*, PageID.5–6.) Plaintiff was then evaluated by a doctor at Mercy Hospital on October 14, 2021. (*Id.*, PageID.6.) Plaintiff's allegations show that after he fell on September 3, 2021, and reported an issue with his knee on that date, he received prompt medical attention and he was referred for additional diagnostic testing and medical treatment.

To the extent Plaintiff claims that Defendants should have diagnosed the specific nature of his knee injury at an earlier date, "the right to adequate medical care does not encompass the right to be diagnosed correctly[.]" *Johnson*, 398 F.3d at 874; *see also Jones v. Muskegon Cnty.*, 625 F.3d 935, 944–45 (6th Cir. 2010) (finding that the doctor's initial incorrect diagnosis of severe constipation, even "in light of [the prisoner's] substantial weight loss and sharp stomach pain[,]" amounted only to negligence given the prisoner also complained of his "inability to have a bowel movement for several days and other stomach pains, which could have been consistent with [the doctor's] diagnosis"). Furthermore, contrary to Plaintiff's assertion that Defendants failed to provide the proper treatment or diagnosis to Plaintiff due to "non-medical reasons" (Compl., ECF No. 1, PageID.6), the factual allegations in the complaint show that Defendants made initial diagnoses and when Plaintiff reported that he continued to experience issues with his knee, Defendants promptly scheduled Plaintiff for further diagnostic testing, which resulted in refined diagnoses. *Cf. Mitchell*, 553 F. App'x at 605 (discussing that with respect to medical treatment of a prisoner-plaintiff, "[t]he ever-shifting diagnoses in [the plaintiff's] treatment history provide[d] legitimate 'medical reasons' for many of the delays[,] [and] [c]hoosing one doctor-supported treatment regimen over another doctor-supported treatment regimen does not amount to deliberate indifference" (citing *Rhinehart*, 509 F. App'x at 513–14.))

14

In summary, contrary to Plaintiff's assertion that Defendants were "deliberat[e]ly indifferent to [his] serious medical needs," Plaintiff's allegations in the complaint show that Defendants were responsive to Plaintiff's medical needs, and that they provided prompt treatment for Plaintiff's medical complaints. (Compl., ECF No. 1, PageID.3–6); *see supra* Part I. Accordingly, because Plaintiff has failed to allege facts showing that the named Defendants were deliberately indifferent or that his treatment was "so woefully inadequate as to amount to no treatment at all," *Mitchell*, 553 F. App'x at 605 (citation omitted), his Eighth Amendment claim is properly dismissed.

### B.    Fourteenth Amendment

Plaintiff also alleges that Defendants Beaumont and Lanore violated his due process rights under the Fourteenth Amendment because the "[C]onstitution imposes upon medical personnel[] the responsibility to provide speedy and competent care." (Compl., ECF No. 1, PageID.6.)

To the extent that Plaintiff intended to raise a substantive due process claim regarding the medical care that he received from Defendants, he fails to state such a claim. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)).

"Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

15

"Where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the Eighth Amendment applies to protect Plaintiff's right to adequate medical treatment during his incarceration. *See supra* Part II.A. Furthermore, nothing in the complaint suggests that Defendants engaged in the sort of egregious conduct that would support a substantive due process claim. Consequently, any intended substantive due process claim will be dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma*

16

*pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   May 19, 2022                                    /s/ Ray Kent
                                                         Ray Kent
                                                         United States Magistrate Judge